IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| SANRIO, INC., <br><br> Plaintiff(s), <br> v. <br><br> JAY YOON also known as JEE YOON, also known as GEE YOON, an individual and doing business as www.dylansjewels.com, formerly known as www.cocobell.com, <br><br> Defendant(s). | CASE NO. 5:10-cv-05930 EJD <br><br> **ORDER GRANTING PLAINTIFF'S MOTION FOR DEFAULT JUDGMENT** <br><br> [Docket Item No. 19] |

Presently before the Court is Plaintiff Sanrio, Inc.'s ("Plaintiff") Motion for Default Judgment ("Motion") against Defendant Jay Yoon ("Defendants"). See Docket Item No. 19. To date, Defendant has not filed an opposition or otherwise appeared in this proceeding. Pursuant to Local Rule 7-1(b), the court determined this motion was suitable for decision without oral argument and vacated the previously-scheduled hearing. Having thoroughly reviewed Plaintiff's pleadings, the Motion will be granted based on the discussion which follows.

### I. FACTUAL AND PROCEDURAL BACKGROUND

On December 12, 2010, Plaintiff initiated this action by filing the Complaint against Defendant for: (1) copyright infringement, (2) trademark infringement, (3) unfair competition in violation of 15 U.S.C. § 1125, (4) trademark dilution in violation of 15 U.S.C. § 1125, (5) state law unfair competition, and (6) state law trademark dilution. See Compl., Docket Item No. 1. The

following facts are taken largely from the Complaint, as noted.

Plaintiff, a California corporation with its principal place of business in South San Francisco, is the exclusive licensee in the United States of Sanrio Company, Ltd., a Japanese corporation, and is a wholly-owned subsidiary of its Japanese parent. See id., at ¶ 4. Plaintiff manufactures, distributes, and sells a wide range of products including distinctive character artwork for use by children and young adults. See id., at ¶ 5. Some of Plaintiff's characters have achieved international recognition, including Hello Kitty. See id., at ¶¶ 5, 6. Plaintiff is the copyright owner of Hello Kitty ("Plaintiff's Copyright") and holds the exclusive right to develop, manufacture, market and sell products bearing the character's image or distinctive elements. See id., at ¶¶ 7-10.

Defendant, a resident of New Jersey, transacts business over the internet and has used the domain names www.dylansjewels.com and www.cocobell.com. See id., at ¶ 14. On these websites, Defendant has offered for sale various formations of costume jewelry featuring the distinctive characteristics of Hello Kitty despite the fact that Defendant is not licensed to sell those items. See id., at ¶¶ 16-18; see also Decl. Of Mariela Hernandez ("Hernandez Decl."). An investigator hired by Plaintiff was able to complete two successful transactions with Defendant and have items depicting Hello Kitty delivered to California. See Hernandez Decl. Plaintiff's intellectual property analyst determined the items offered for sale by Defendant are counterfeit. See Decl. of Yumi Nancy Suemori ("Suemori Decl."), at ¶¶ 8, 9.

Defendant failed to respond or otherwise defend after being served with the action.[1] The clerk entered Defendant's default on April 6, 2011. See Docket Item No. 14. This Motion followed.

## I. DISCUSSION

### A. Legal Standard

Pursuant to Federal Rule of Civil Procedure 55(b), the court may enter default judgment against a defendant who has failed to plead or otherwise defend an action. "The district court's decision whether to enter default judgment is a discretionary one." Aldabe v. Aldabe, 616 F.2d

---

[1] Although Defendant did not file a formal opposition to the Motion, the court did receive correspondence from Defendant dated September 7, 2011, which the court has instructed the clerk to docket. The correspondence has no bearing on the resolution of issues presented here.

1089, 1092 (9th Cir. 1980). The Ninth Circuit has provided seven factors for consideration by the district court in exercising its discretion to enter default judgment, known commonly as the "Eitel factors": (1) the possibility of prejudice to the plaintiff; (2) the merits of plaintiff's substantive claim; (3) the sufficiency of the complaint; (4) the sum of money at stake in the action; (5) the possibility of dispute concerning material facts; (6) whether default was due to excusable neglect and; (7) the strong policy underlying the Federal Rules of Civil Procedure favoring decisions on the merits. Eitel v. McCool, 782 F.2d 1470, 1471-72 (9th Cir. 1986). When assessing these factors, all factual allegations in the complaint are taken as true, except those with regard to damages. Televideo Sys., Inc. v. Heidenthal, 826 F.2d 915, 917-18 (9th Cir. 1987).

In addition, courts have an affirmative duty to examine their own jurisdiction when entry of judgment is sought against a party in default. In re Tuli, 172 F.3d 707, 712 (9th Cir. 1999). The court begins with the jurisdictional analysis.

**B.     Subject Matter Jurisdiction**

For subject matter jurisdiction, district courts have original jurisdiction to hear civil actions (1) "arising under the Constitution, laws, or treaties of the United States," and (2) "arising under any Act of Congress relating to . . . copyrights and trademarks." See 28 U.S.C. §§ 1331, 1338(a). Based on these statutes, federal subject matter jurisdiction exists over Plaintiff's claim for copyright infringement.[2]

**C.     Personal Jurisdiction**

For personal jurisdiction, the court applies California law. Mavrix Photo, Inc. v. Brand Techs., Inc., 647 F.3d 1218, 1223 (9th Cir. 2011). "California's long-arm statute, Cal. Civ. Proc. Code § 410.10, is coextensive with federal due process requirements, so the jurisdictional analyses under state law and federal due process are the same." Id. Here, the complaint establishes that Defendant is a resident of New Jersey. See Compl., at ¶ 14. Thus, in order for this court to exercise jurisdiction over Defendant, "that defendant must have at least 'minimum contacts' with the relevant forum such that the exercise of jurisdiction 'does not offend traditional notions of fair play and

---

[2] Although Plaintiff's Complaint additional claims, this Motion relies solely on the claim for copyright infringement. The court analyzes that claim only.

3
CASE NO. 5:10-cv-05930 EJD
ORDER GRANTING PLAINTIFF'S MOTION FOR DEFAULT JUDGMENT

substantial justice.'" Schwarzenegger v. Fred Martin Motor Co., 374 F.3d 797, 801 (9th Cir. 2004) (internal citations omitted). A determination of personal jurisdiction based on 'minimum contacts' requires a three-step analysis:

> (1) the non-resident defendant must purposefully direct his activities or consummate some transaction with the forum or resident thereof; or perform some act by which he purposefully avails himself of the privileges of conducting activities in the forum, thereby invoking the benefits and protections of its laws; (2) the claim must be one which arises out of or relates to the defendant's forum-related activities; and (3) the exercise of jurisdiction must comport with fair play and substantial justice, i.e. it must be reasonable.

Core-Vent Corp. v. Nobel Industries AB, 11 F.3d 1482, 1484 (9th Cir. 1993).

### 1. Purposeful Direction

To establish 'purposeful direction,' Plaintiff must demonstrate that defendant "engage[d] in some form of affirmative conduct allowing or promoting the transaction of business within the forum state." Gray & Co. V. Firstenberg Mach. Co., 913 F.2d 758, 760 (9th Cir. 1990). A defendant purposefully directs activity at a forum state when he "(1) commit[s] an intentional act, (2) expressly aimed at the forum state, (3) causing harm that the defendant knows is likely to be suffered in the forum state." Schwarzenegger, 374 F.3d at 805. "The touchstone is whether the 'defendant's conduct and connection with the forum State are such that he should reasonably anticipate being haled into court there.'" Gordy v. Daily News, L.P., 95 F.3d 829, 832 (9th Cir. 1996) (quoting World-Wide Volkswagen Corp. v. Woodson, 444 U.S. 286, 297 (1980)). "The requisite connection, however, need not involve physical entry into the forum." Id. (citing Burger King Corp. v. Rudzewicz, 471 U.S. 462, 476 (1985)).

Looking at the Complaint, Plaintiff alleges that Defendant "is an individual and doing business as www.dylansjewels.com, formerly known as www.cocobell.com." See Compl. at ¶ 14. Plaintiff also alleges that Defendant "does business in this judicial district through offers and sales" of the infringing products in California, and has provided the declaration of a California-based investigator who successfully purchased and received products from Defendant. See id.; see also Hernandez Decl. Moreover, Plaintiff claims that Defendant has "acted in willful disregard of laws protecting Plaintiff's goodwill and related proprietary rights" and has "confused and deceived . . .

the consuming public concerning the source and sponsorship of the product." See Compl., at ¶ 18; see also Suemori Decl., at ¶ 11.

The allegations and supporting materials, which establish that Defendant maintains an actively commercial website targeted at customers in California, are sufficient to establish purposeful direction. See Stomp, Inc. v. Neato, LLC, 61 F. Supp. 2d 1074, 1078 (C.D. Cal. 1999) ("[P]ersonal jurisdiction is not appropriate when a website is merely a passive, either as an advertisement or for informational purposes, but is appropriate when an entity is conducting business over the Internet."). This portion of the test is therefore satisfied.

### 2. Arises Out Of or Relates To

The second element of the 'minimum contacts' test requires that the claim be one that 'arises out of or relates to' defendant's activities in the forum. Core-Vent Corp., 11 F.3d at 1484. Here, Plaintiff's claims plainly arise out of the sales of infringing products to California customers. As such, Plaintiff meets this element.

### 3. Reasonability

The final element requires that jurisdiction in this forum be reasonable such that it comports with fair play and substantial justice. Id. Courts generally "presume that an otherwise valid exercise of specific jurisdiction is reasonable." Ballard v. Savage, 65 F.3d 1495, 1500 (9th Cir. 1995). "The burden of convincing [the court] otherwise is on the [defendant]." Id. Here, Defendant did not respond to the Motion and has not otherwise submitted information to suggest to that personal jurisdiction is unreasonable. Accordingly, the presumption of reasonableness prevails.

### D. Service of Process

The court must assess whether the Defendant was properly served with notice of this action. Plaintiff served the Summons, Complaint and other documents on Defendant by certified mail on January 10, 2011. See Docket Item No. 10. The court therefore finds Plaintiff effected service of process in conformance with California Code of Civil Procedure § 415.40 and subsection (e)(1) of Federal Rule of Civil Procedure 4.

### E. The Eitel Factors

Having found the existence of jurisdiction and proper notice, the court now turns to the Eitel

factors. Of these, most important are the second and third factors since the copyright infringement claim appears to have merit and the Complaint is sufficient to state such a claim. In order to prevail on a claim for copyright infringement, Plaintiff must show (1) ownership of the copyright and (2) copying of protected elements of the work by Defendant. Shaw v. Lindheim, 919 F.2d 1353, 1356 (9th Cir. 1990). As to ownership, a certificate of registration made before or within five years after publication of the work is prima facie evidence of copyright validity and of the facts stated in the certificate. 17 U.S.C. § 410(c). Here, Plaintiff has shown that it owns the copyrights at issue herein. See Compl., at ¶¶ 6-9; see also Decl. of Nicole L. Drey ("Drey Decl."), at Ex. K. In addition, Plaintiff has demonstrated that Defendant's infringing products depict nearly identical copies of Plaintiff's copyrighted character images.[3] See Compl., at ¶¶ 3, 4, 16-18; see also Hernandez Decl., Suemori Decl. at ¶ 10. Accordingly, Plaintiff has stated a claim for copyright infringement. The second and third Eitel factors weigh in favor of default judgment.

Most of the remaining Eitel factors also weigh in favor of default judgment. Plaintiff will be prejudiced if this motion is denied because it will continue to suffer financial and reputational loss due to Defendant's infringing activities and will be left without a remedy. Due to the marked similarity between Plaintiff's copyrights and Defendant's products, it is unlikely Defendant could dispute the alleged facts contained in the Complaint, even if appeared he appeared in this action. Concerning the possibility of excusable neglect, it is clear from that Defendant received notice of this proceeding and did not respond or otherwise appear. See Drey Decl., at ¶ 14. There is no evidence, or even suggestion, that Plaintiff's failure to participate is due to anything other than inaction.

Eitel also requires observation of the policy favoring determination of cases on their merits rather than through default judgment. Eitel, 782 F.2d at 1472. The court recognizes that default judgments are generally disfavored. See Pena v. Seguros La Comercial, S.A., 770 F.2d 811, 814

---

[3] The test utilized to determine "copying" or "substantial similarity" contains extrinsic and intrinsic parts. Shaw, 919 F.2d at 1356. Both parts are satisfied "where works are so overwhelmingly identical that the possibility of independent creation is precluded." See Twentieth Century Fox Film Corp. v. MCA, Inc., 715 F.2d 1327, 1330 (9th Cir. 1983). Such is the case here. See Suemori Decl.

(9th Cir. 1985). However, the Federal Rules of Civil Procedure provide for entry of default in situations such as this: where a party "has failed to plead or otherwise defend." See Fed. R. Civ. P. 55(a). Defendant's complete failure to properly respond to this action or file *anything* in a case that has now been pending for over one year places this case squarely within Rule 55.

Finally, the court considers the sum of money at stake. Here, Plaintiff seeks a permanent injunction as well as $100,000.00 in statutory damages pursuant to 17 U.S.C. § 504(c). This is significant. But at the same time, Defendant's infringing activities appear extensive. See Hernandez Decl. Thus, the relief requested by Plaintiff does not outweigh those factors favoring default judgment in light of the seriousness of Defendant's conduct.

Overall, an examination of the Eitel factors weigh in favor of entry of default judgment against Defendant.

**F.     Remedies**

Having determined that default judgment may be entered, the court must now determine the appropriate remedy. See 3A Entm't Ltd. v. Constant Entm't, Inc., No. C 08-1274 JW, 2009 WL 248261, 2009 U.S. Dist. LEXIS 11042, at *9-10 (N.D. Cal. Jan 30, 2009). As already mentioned, Plaintiff requests a permanent injunction, and statutory damages.

**1.     Permanent Injunction**

Pursuant to 17 U.S.C. § 502(a), a court may grant an injunction in order to "prevent or restrain infringement of a copyright." "Generally, a showing of copyright infringement liability and the threat of future violations is sufficient to warrant a permanent injunction." Sega Enters., LTD, v. MAPHIA, 948 F. Supp. 923, 940 (N.D. Cal. 1996).

Here, the court finds that Defendant's prior conduct and on-going ability to sell infringing products constitute a continued threat. Indeed, Defendant has demonstrated that he can easily market these products over the internet on multiple websites by simply moving his online marketplace from one domain to another. See Drey Decl., at ¶ 2. Moreover, the fact that Defendant chose not to participate in this litigation provides little comfort that Defendant will voluntarily abate his infringing activity. Therefore, Plaintiff is entitled to permanent injunctive relief. The court will issue an injunction appropriate to the circumstances presented.

### 2. Statutory Damages

The owner of a copyright may elect to recover an award based on actual or statutory damages for any infringement. 17 U.S.C. § 504(c). If, as here, statutory damages are pursued, they may be awarded regardless of the adequacy of evidence demonstrating actual damages. Columbia Pictures Television, Inc v Krypton Broad. of Birmingham, Inc., 259 F.3d 1186 (9th Cir. 2001). This is "because awards of statutory damages serve both compensatory and punitive purposes . . . ." L.A. News Serv. v. Reuters Television Intern., Ltd., 149 F.3d 987, 996 (9th Cir 1998). "Statutory damages are particularly appropriate in a case . . . in which defendant has failed to mount any defense or to participate in discovery, thereby increasing the difficulty of ascertaining plaintiff's actual damages." Jackson v. Sturkie, 255 F. Supp. 2d 1096, 1101 (N.D. Cal. 2003).

Section 504(c) allows for statutory damages within the range of $750.00 to $30,000.00. However, the court may increase the award of statutory damages to a sum not to exceed $150,000.00 if the infringement was willful. 17 U.S.C. § 504(c)(2). For the purposes of this inquiry, "a defendant acts willfully if he or she knew, had reason to know, or recklessly disregarded the fact that his or her conduct constituted copyright infringement." A & M Records, Inc. v. Gen. Audio Video Cassettes, Inc., 948 F. Supp. 1449, 1457 (C.D. Cal. 1996) (citing Peer Int'l Corp. v. Pausa Records, Inc., 909 F.2d 1332, 1335-36 (9th Cir. 1990)). In this case, Defendant knew and disregarded his infringing conduct, considering the infringing products contain nearly exact replications of Plaintiff's copyrighted characters. When this was brought to Defendant's attention, he changed the name of his sales website in order to avoid detection instead of ceasing sales of infringing products. Thus, Plaintiff has established willfulness for the purposes of increased statutory damages.

The court must now determine the appropriate amount to award. When statutory damages are elected, "the court has wide discretion in determining the amount of statutory damages to be awarded, constrained only by the specified maxima and minima." Harris v. Emus Records Corp., 734 F.2d 1329, 1335 (9th Cir. 1984). Here, Plaintiff requests an award of $100,000.00 because Defendant: (1) "offered for sale and sole numerous items bearing identical duplicates of Plaintiff's world-famous properties," (2) "did so with full knowledge that his products were counterfeit in willful disregard of Plaintiff's rights. . . having received multiple letters from Plaintiff regarding the

infringing nature of his product," and (3) "moved his operations to a new domain name in light of being caught and continued to sell counterfeit merchandise. . . ." The court agrees with Plaintiff that an award of $100,000.00 is justified. Indeed, Defendant continued to offer infringing items for sale after being informed that his conduct was unlawful, and even went to so far as to the change the name of his website to avoid detection. That is particularly egregious behavior. Although evidence of Defendant's profit or Plaintiff's loss have not been presented here, the court infers from Defendant's actions that he was indeed profiting from the infringement; otherwise, he would not have attempted to preserve his business under another guise. Moreover, the amount requested is substantial enough to compensate Plaintiffs, either for its loss, Defendant's profit, or both. It also furthers the policy goal of specific and general deterrence while at the same time is not overreaching.

## III. ORDER

Based on the foregoing, Plaintiff's Motion for Default Judgment is GRANTED as follows:

1. Plaintiff is awarded statutory damages of $100,000.00 pursuant to 17 U.S.C. § 504(c). Plaintiff is also entitled to post-judgment interest on this amount pursuant to 28 U.S.C. § 1961(a).

2. The court issues the following permanent injunction:

Defendant and his agents, servants, employees and all persons in active concert and participation with them who receive actual notice of this injunction are hereby restrained and enjoined from infringing Plaintiff's Copyright, either directly or contributorily, in any manner, including generally, but not limited to manufacturing, importing, distributing, advertising, selling and/or offering for sale any merchandise which features Plaintiff's Copyright, and specifically:

(a) Importing, manufacturing, distributing, advertising, selling and/or offering for sale counterfeit products or any other unauthorized products which picture, reproduce, copy or use the likeness of or bear a substantial similarity to Plaintiff's Copyright;

(b) Importing, manufacturing, distributing, advertising, selling and/or offering for sale in connection thereto any unauthorized promotional materials, labels, packaging or containers which picture, reproduce, copy or use the likenesses of or bear a confusing similarity to Plaintiff's copyright;

(c) Engaging in any conduct that tends to falsely represent that, or is likely to confuse, mislead or deceive purchasers, Defendant's customers and/or members of the public to believe, the actions of Defendant, the products sold by Defendant, or Defendant himself are connected with Plaintiff, are sponsored, approved or licensed by Plaintiff, or are affiliated with Plaintiff.

(d) Affixing, applying, annexing or using in connection with the importation, manufacture, distribution, advertising, sale and/or offer for sale or other use of any goods or services, a false description or representation, including words or other symbols, tending to falsely describe or represent such goods as being those of Plaintiff.

3. Since this Order and the ensuing Judgment effectively resolve this case against all remaining defendants, the Clerk shall close this file upon entry of Judgment.

**IT IS SO ORDERED.**

Dated: February 24, 2012


EDWARD J. DAVILA
United States District Judge